Plaintiff alleges that the defendant is indebted unto him in the sum of $400 for this, to-wit: That during the month of September, 1946, the defendant came to his house inquiring if he had any junk iron to sell and that he pointed out to him two iron rollers lying in a ditch on the side of the house on Lombard Street in New Iberia, Louisiana. That about four days later, the defendant sent his men, with a truck, to Nathan Broussard's house on French Street, and they took from Nathan Broussard's yard, one complete sugar mill with three rollers. Nathan Broussard is the plaintiff's brother. That about a week later, when he found out what had happened, he telephoned the defendant and told him not to use the mill and rollers and return them to him. This, defendant never did. That the rollers were worth the sum of $400 which defendant has never paid him, despite amicable demand. The prayer of his petition is for a monetary judgment in the sum of $400, with legal interest from judicial demand.
To the petition, the defendant first filed exceptions of vagueness and of no right or cause of action. Plaintiff evidently realized that the exception of no cause of action may have been good because he shortly thereafter filed a supplemental petition in which he alleged that the complete sugar mill with the three rollers which he had alleged were taken from his brother, Nathan Broussard's yard, was his property and that he had never agreed to sell it to the defendant.
The defendant in his answer denies all the allegations contained in both the original and the supplemental petitions of the plaintiff with the exception that demand for the sum claimed was made on him, which he denies owing, and then, assuming the position of a plaintiff in reconvention he sets out that in the early part of the year 1946, the plaintiff, on numerous occasions called him and requested that he go to his brother's place and there pick up some scrap iron which he desired to sell him. Accordingly, on or about March 8, 1946, he sent some of his men to Nathan Broussard's house on French Street, and they did pick up certain scrap metal pointed out to them by persons living in the house as being the junk which he had been requested to pick up. This junk consisted of an old, broken, hand operated sugar mill which was of no value except as scrap metal. It was picked up by his men and found to weigh 1470 pounds and had a value as scrap cast iron, on the current market, of $7.35. This amount he admits he owes the plaintiff but he alleges that plaintiff is indebted unto him in a far greater sum for the reason that between the dates of September 24 and October 27, 1946, he sold and delivered to him certain items of merchandise amounting to the sum of $72.80, which amount is still due and owing him by the plaintiff and for which he is entitled to judgment, subject to the credit of $7.35 which he admits owing him for the scrap metal. He accordingly prays for judgment against the plaintiff, on his reconventional demand, for the difference between the two amounts stated.
In his written reasons for judgment, the trial judge stated that in his opinion, the suit was one sounding in tort. He held that plaintiff intended to sell the defendant one article and the defendant understood him to mean another, and therefore if plaintiff has suffered any damage in this transaction, it was through their misunderstanding. He then states that a liability in tort is always controlled by negligence and in order for plaintiff to have recovered, it was necessary for him to prove that whatever damage he sustained was occasioned by the negligence of the defendant. This, he holds, the defendant has failed to do and as the only value the defendant received from the property was for junk, all that the plaintiff is entitled to recover is that value which is the sum of $7.35. The plaintiff *Page 671 
did not contest the demand made by the defendant in reconvention and the judgment therefore was one in favor of plaintiff on the original demand in the sum of $7.35 and then in favor of the defendant on his reconventional demand in the sum of $72.80. The trial judge divided the costs taxing the plaintiff with those of the trial of his original demand and the defendant with those of the trial of the reconventional demand. From the judgment so rendered, plaintiff has taken this appeal.
We entertain some doubt as to the cause of action being ex delicto. We are of the opinion rather that plaintiff's demand is based on a quasi-contract as in effect he charges the defendant with receiving property which was not due him. His liability under such circumstances is fixed by the terms of Article 2301 of the Civil Code, which obliges the one who has received "what is not due to him, whether he receives it through error or knowingly * * * to restore it to him from whom he has unduly received it." Articles 2312 and 2313 we believe also to be pertinent to the issue involved. The first of these two articles as far as it applies, reads as follows: "If the thing unduly received is an immovable property or a corporeal movable, he who has received it, is bound to restore it in kind, if it remain, or its value, if it be destroyed or injured by his fault; * * *." The second provides that "if he who has received bona fide, has sold the thing, he is bound to retore only the price of the sale. If he has received in bad faith, he is bound besides this restitution to indemnify fully the person who has paid."
Nowhere in his petition does plaintiff charge the defendant with having wilfully done anything wrong or illegally caused him injury or damage. He does not allege bad faith or even a lack of good faith on his part in having sent his men to his brother's property to pick up the roller mill. The bona fides of the one receiving the property seems to be an important factor in applying the provisions of the various articles of the Civil Code which we have cited. The gist of plaintiff's cause of action is found in paragraph 3 of his supplemental petition in which he alleges that defendant sent his men to Nathan Broussard's yard and took from that yard the three roller mill which was his property and which he had never agreed to sell him. The defendant denies this allegation and then avers affirmatively that plaintiff had requested him to go to his brother's place and there pick up some scrap iron which he desired to sell him, and that accordingly, on March 8, 1946, he did send his men there and they picked up certain scrap metal which was pointed out to them by persons living on the property as being the junk which plaintiff had requested him to buy. There we have the issue joined between these parties with the result, at most, of some misunderstanding between them. If the defendant received this roller mill from someone when it was not due him, he received it through error, as far as the pleadings show, and his obligation under Article 2301 of the Civil Code is to restore it to the one from whom he unjustly received it. If he was unable to restore it in kind, then by the terms of Article 2312, he had to restore fault and if he sold it he has to restore the fault and if he sold it he has to restore the price of the sale if he received it bona fide; and if he received it in bad faith, besides the restitution, he has to indemnify the person who has paid. Article 2313.
Although, as we have already stated, plaintiff did not allege bad faith on the part of defendant, in view of the provisions of the Articles of the Code cited from which his obligation may vary, depending on the question of his good or bad faith, it may be proper to view the evidence with that consideration in mind. The burden, we believe was on the plaintiff to show at least a lack of good faith by the defendant in doing what he is charged with having done.
We cannot say that plaintiff's testimony impresses us very strongly. In the first place he had alleged that during the month of September, 1946, the defendant came to his house to inquire if he had any junk iron to sell and that he pointed out to him two iron rollers which were lying in a ditch on the side of his house on Lombard Street. When asked on cross-examination if that was correct, he says, *Page 672 
"No, sir, I don't think he knew where I lived because he would have sent his men home instead of at my brother's." Then on being asked whether he had pointed out to defendant the iron rollers lying in the ditch, as he had also alleged, he says that he did, but that was when he was living at 624 French Street, although in his petition he had alleged that that was on Lombard Street. Then apparently, in order to straighten himself out on this, he says that it was on the corner of Lombard and French Streets. It seems that after making these specific allegations plaintiff could have been a bit more definite in his testimony on this important point which he would make it appear opened the negotiations between him and the defendant.
Then on the question of the time of the year when all of this took place, he had alleged that it was in September, 1946. When he testifies, however, he is not certain as to which month it was. On being asked if it could have been in March, 1946, he says, "No, it was later than that; it was later in the summertime." In this connection, it is important to note that the defendant, as he testified, made slips of all of his purchases of scrap iron for his own record and he offered and introduced in evidence a record dated March 8, 1946, involving the purchase of 1470 pounds of scrap cast iron for $7.35. This record, he testified, is the one covering the transaction involving this roller mill. It corroborates his contention that instead of September, it was in March of 1946 that he hauled it from Nathan Broussard's yard. As plaintiff had alleged that it was in September of 1946, and that it was about one week later that he learned what had happened and called defendant to complain about the matter, it would seem that again he was mistaken and that instead of it being only one week after defendant had taken the mill that he complained to him, it was more than six months later.
Another circumstance worth noting arises from the fact that it was during the months of September, October, and November of that year that plaintiff admitted purchasing merchandise from the defendant amounting to the sum of $72.80 and it was only then, for the first time, after the defendant had requested payment for that amount that he told him he owed him more than that for the mill he had taken. This belated claim of an off-set strikes us as being somewhat of an afterthought on his part.
We believe that in receiving the property in the manner he did, defendant acted in perfect good faith. He sent his men in open daylight to get the mill, and even though these men are negroes, their testimony is to the effect that before taking the mill they spoke to a white lady who occupied the house and she pointed out the property to them. Their testimony is not contradicted nor is it disputed in any way. There is nothing in the record to indicate that this lady was not available as a witness and yet she was not called on to testify.
With regard to the value of the property taken, we think that the plaintiff has failed to prove the value of $400 which he claims. On the contrary, we find that the defendant, through his witnesses, has shown that this mill was broken and that it was absolutely no more than cast iron junk. If it had a greater value, certainly it would have been to his interest as a dealer in salvaged goods to try to sell it as an article that could still be used, rather than to throw it in a railroad car which he was loading up with other scrap metal.
We have concluded therefore that the judgment appealed from properly allowed the plaintiff the scrap value of the mill as proven and also correctly allowed the defendant his claim in reconvention. There is some point raised by plaintiff's counsel in their brief to the effect that the value which the defendant should have been made to pay is the sum of $10.58 instead of $7.35. This amounts to the difference between fifty cents which counsel for plaintiff stated is the rate at which the defendant paid for the scrap iron and the sum of seventy two cents which he states the defendant received for it. There isn't sufficient proof to justify that change in the judgment which amounts to the sum of $3.23. The only testimony on this point is that of the defendant who, when he was asked how much he got for the syrup mill *Page 673 
that he took from Nathan Broussard's yard, answers, "At that time I paid fifty cents a hundred and paid seventy two cents a hundred." Frankly we do not understand what that means and it is by no means sufficient testimony on which to base an amendment to the judgment.
For the reasons stated, the judgment appealed from is affirmed at the costs of the plaintiff, appellant herein.